In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-23-00042-CV

MICHAEL MITCHELL, Appellant

V.

USAA GENERAL INDEMNITY COMPANY, Appellee

_____

On Appeal from the 172nd District Court
Jefferson County, Texas
Trial Cause No. E-207,383

_____

## MEMORANDUM OPINION

Michael Mitchell ("Mitchell" or "Plaintiff") sued USAA General Indemnity Company ("USAA" or "USAA GIC"), his homeowners insurance company, seeking additional compensation for damage allegedly resulting from an explosion at a nearby chemical plant. After Mitchell failed to comply with USAA's discovery requests and misrepresented information to the trial court, the trial court struck Mitchell's pleadings and dismissed the case with prejudice. Mitchell appeals the

1

dismissal, contending that this sanction was not authorized under applicable case law, as it was unduly severe in light of the conduct it addressed. We affirm the trial court's Order of Dismissal with Prejudice.

## BACKGROUND

In November 2019, there was an explosion at the TPC chemical facility in Port Neches that allegedly damaged multiple buildings in the area, including Mitchell's home. After discussions between Mitchell's attorney's office and USAA reached an impasse, Mitchell filed suit. We summarize the proceedings below.

### The Policy

The parties do not dispute that USAA insured Mitchell's home on November 27, 2019, the date of the explosion. The policy provided the following maximum coverage limits: (1) $137,000 for the house; (2) $13,700 for other structures; (3) $102,750 for Mitchell's personal property; and (4) $27,400 for loss of use. It carried a $1,000 deductible for losses other than wind and hail. The policy also contained several terminology definitions, policy endorsements, conditions, coverage explanations, and coverage exclusions. The policy provisions pertinent to this case include:

> "**Actual cash value**" is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for obsolescence and a "**deduction for depreciation**".

2

For property covered under Coverage A - Dwelling Protection or Coverage B – Other Structures Protection, the deduction will be based on the age and condition of the materials making up the damaged property and will apply to materials, labor, sales tax, and overhead and profit that are included in the cost to repair or replace the damaged property.

[] Dwelling Protection Coverage[:]

We insure against "sudden and accidental", direct, physical loss to tangible property described in PROPERTY WE COVER – Coverages A [dwelling] and B [other structures] unless excluded in Section I – LOSSES WE DO NOT COVER.

[] LOSSES WE DO NOT COVER[:]

2.a. **Weather Conditions** which include but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION item 1. above to produce the loss.

[Insured's] Duties After Loss[:]

a. Promptly notify us or our agent about the loss. This policy will not provide any coverage for your loss if you fail to notify us about the loss within one year after the loss actually occurs unless good cause can be shown by you or the person filing the claim;

e. Cooperate with us in the investigation of a claim;

g. As often as we reasonably require:

   (1) Show the damaged property:
   (2) Provide us with records and documents we request and permit us to make copies; and

3

(3) Submit to and sign, while not in the presence of any other "**insured**" other than a minor, who must have a parent or guardian present

    (a) Statements; and
    (b) Examinations under oath;

Suits Against USAA:

**10. Suit Against Us.** No action can be brought against us unless you have:
    a. Given us notice of the loss;
    b. Complied with all other policy provisions; and
    c. Started action before the earlier of:
        (1) two years from the date we accept or reject the claim, or
        (2) three years from the date of loss that is the subject of the claim.

[] Appraisal[:] If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Each party will:

    a.  Pay its own appraiser; and
    b.  Bear the other expense of the appraisal and umpire equally.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial

interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the "actual cash value", replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded and modified by written mutual consent signed by you and us.

Pretrial Events

Eric Dick ("Dick"), Plaintiff's attorney, sent USAA a letter of representation dated August 24, 2020. In his letter, Dick directed USAA to communicate through him, rather than directly with Mitchell, to include his firm as a payee on any payment issued on the claim and requested a copy of the policy. Dick also indicated that, if applicable, he intended "to invoke appraisal pursuant to the terms and conditions of the insurance policy at issue[,]" and stated that he would "outline [his] client's disputes as to the amount of loss and designate an appraiser in a separate letter." USAA responded on September 3, 2020, acknowledging Dick's representation and providing the adjuster's name and contact information, noting that USAA was awaiting the inspection. On September 9, 2020, USAA again provided the adjuster's name and contact information, requesting that personnel with Dick's firm contact

5

the adjuster to schedule the inspection. By that date, however, Dick's firm had retained Quantum Claim Consulting Services ("Quantum") to evaluate Mitchell's property, and Quantum did so on September 5, 2020. Quantum estimated Mitchell's repair cost at $29,182.25, but its estimate does not state that the damage and resulting necessary repairs were caused by the TPC explosion.

On October 13, 2020, Dick sent USAA a demand letter seeking Quantum's estimated repair cost of $29,182.25, less any deductible and prior payments, plus $10,000 in costs and attorney's fees. In that letter, Dick alleged multiple violations of the Texas Deceptive Trade Practices Act and the Texas Insurance Code; he also demanded an appraisal. More specifically, Dick contended that USAA had not reasonably investigated Mitchell's claim; had underpaid Mitchell's claim; had misrepresented Mitchell's coverage and damage; had failed to timely confirm coverage or explain its claims decisions; and had breached the common-law duty of good faith and fair dealing. Dick also identified his appraiser and provided the appraiser's telephone number and e-mail address.

On December 28, 2020, Crawford inspected Mitchell's property on USAA's behalf and arrived at a replacement cost value of $4,367.11. After subtracting the $1,000 deductible, USAA determined that it owed Mitchell $3,367.11. USAA then forwarded the estimate to Dick and issued Mitchell a check for that amount on or about January 20, 2021. On January 29, 2021, USAA contacted Dick's firm, stating:

6

[] We just gave you an estimate after an inspection, and paid on it. This is your turn in the deliberative process to let us know if you are disputing anything. Now that you have our estimate, please send me your contractor's supplement to it, along with supporting documentation for any additional items they are claiming, if you have one, so we can review it.

Also – an appraisal is for price, not scope. Are you stating that you are in agreement with our estimate, but are only in disagreement about the pricing? May I see your contractor's estimate that is in agreement with ours, but simply has higher prices, so that I may review it and advise if we will meet those prices or not?

Please advise . . . Thank you!

On February 1, 2021, personnel with Dick's firm responded:

If you do not want to commence the appraisal process, we can proceed with litigation. I have sent you our estimate and our invocation of appraisal on multiple occasions. Attached is the appraisal provision from Mr. Mitchell's policy stating Appraisal is to settle a disagreement on the Amount of Loss, not the price of materials. Attached for you again our appraisal demand, estimate and your appraisal provision. Will you be naming an appraiser on this file?

On February 9, 2021, USAA replied:

I am writing to let you know that at this time, we are not moving forward with the appraisal process. You have submitted an estimate for an increased scope from what our initial estimate entails, and I've confirmed that the adjuster that did the inspection in fact did already see that estimate, so it's been asked/answered. We did not agree with that estimate's claimed scope of damages at all. However, since you are standing by that increased scope, we are moving forward to hire an engineer to further assess the damages to clear up any questions on what is associated with the 2019 loss. At this time, we would ask you please cooperate with the engineer for an inspection, and please wait for that engineer's assessment to come back. We will then adjust our estimate accordingly, and at that time, you can re-evaluate your decision on your next step in this process. Thank you!

7

In an undated e-mail, USAA advised Dick's firm that the independent adjuster inspected only the wind damage for which Mitchell had filed a separate claim. For that reason, and because counsel was not present for the initial inspection, USAA indicated that it would "request a re-inspection so [USAA] can properly scope the loss[,]" and would "wait to receive the UPDATED damage report."

As USAA indicated in the above e-mail of February 9, 2021, it retained an engineer, Paul Besse, P.E. ("Besse"), of Donan Engineering Co., to evaluate Mitchell's damage. Besse's March 22, 2021 report states, in summary, that

- The explosion did not rack the house.

- The cracks in the walls and ceilings and the gaps in the crown molding are caused by hygrometric and thermal expansion and contraction of the building materials.

- The displaced north door is due to water intrusion into the garage's north wall.

- The house is not damaged by the TPC explosion.

Besse further observed that the Mitchell's exterior and interior walls were "plumb, indicating the house [was] not racked[,]" the front and back porch posts and fences were neither leaning nor displaced, and that the HVAC unit and backyard sheds were not displaced from their concrete pads or footings. Besse also noted no dents or displacement in the metal roof over the back porch. Besse did, however, document that a shed door was displaced and that a house door and its frame were

8

displaced, with bent flashing. He did note "cracks less than 1/32 inch wide" in the kitchen ceiling and the living room's south wall, as well as gaps in the crown molding sealant and a gap where the dining room chandelier medallion met the ceiling.

Besse's examination of Mitchell's attic and roof revealed cracks "along the grains of rafters[]" and "fracture[s] near knots in the wood and at nail penetrations[]" in sections of the "plywood roof decking's lower laminates" but did not show fractures "through multiple laminates[]" of the roof decking. Besse noted no fractures in the "nearby dimensional lumber" or in "the ridge beams or rafters[,]" although he did see fractures in the purlins "beneath the west- and east-facing roof slopes[.]"

In describing the damage that an explosion would be expected to cause, Besse first explained how an explosion releases "energy in the form of light, heat, and a shockwave." The "shockwave consists of highly compressed air that travels outward from the source[,]" losing strength and speed as it does so. It would typically apply the greatest pressure to the front wall of the structure "facing the blast[,]" and would cause initial damage to "weak, nonstructural components that are attached to or are near the house before any structural damage occurs to the main structure[,]" such as fences, sheds, and yard items. According to Besse, "[s]tructural damage to a building's interior walls, floors, and foundation will not typically occur unless severe

exterior damage is first created by the pressure wave." As for drywall defects, Besse noted that "[j]oint defects in drywall generally occur in straight-line patterns[,]" and "typically occurs along the edges of boards, in corners, or along the edge of taped joints. Joint cracking can be caused by structural movement, thermal expansion and contraction, or drying of joint compounds." Conversely, cracks resulting from vibrations (such as an explosion) "typically result in 'X'-patterned and symmetrical cracks around openings." Besse observed no cracks that followed this pattern and stated that "[t]he characteristics of the cracks and gaps at the subject property are not consistent with vibration but are indicative of thermal and hygrometric expansion and contraction." He further opined that the "[t]he cracks along the grains of the rafters are checks due to differential drying between the lumber's piths and shells[]" and concluded that "[t]he house was not damaged by the TPC plant explosion."

USAA sent Dick's firm Besse's report on March 25, 2021, advising that "[b]ased on this report, we will not be approving any changes to our current estimate." On April 8, 2021, USAA responded to Dick's firm regarding the repeated requests to name an appraiser, quoting the policy's appraisal clause and stating "[t]he actual causes of loss found are not covered under the policy. We are not asking for monies back, but we are not issuing further payments to repair items that are not covered under this policy." USAA formally denied part of Mitchell's claim on April 9, 2021 on the basis that Mitchell's damage was caused by "wear and tear, marring,

10

or deterioration" or "settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs, or ceilings[]" which were not covered by the policy. Mitchell filed suit four days later, on April 13, 2021.

The Pleadings

In his Original Petition, Mitchell contends that USAA improperly adjusted, investigated, and paid Mitchell's claim, despite policy coverage and USAA's "obvious knowledge and evidence of serious damages." Mitchell further alleges that USAA "misrepresented" the amount of covered damage; failed to try to settle Mitchell's claim fairly; failed to timely confirm or deny coverage; and failed to explain its denial. According to the Petition, these alleged acts and omissions breached the contract between Mitchell and USAA; were fraudulent; were deceptive trade practices and violated various provisions of the Texas Insurance Code as well as the common law duty of good faith and fair dealing. Mitchell sought actual and exemplary damages, plus interest and attorney's fees.

Mitchell attached required disclosures to his Petition. These disclosures generally repeat the allegations in Mitchell's DTPA demand and petition. They do not, however, list TPC as a "person who may be responsible as a third party[,]" stating only "[n]one at this time."

Mitchell also attached his expert witness designation to his petition. In addition to designating himself as an expert on attorney's fees, and designating an

11

adjuster as a bad faith expert, Mitchell designated Richard Gadrow ("Gadrow"), Don Foreman ("Foreman"), and Shiran Perera, P.E. ("Perera"), and provided their contact information. According to Mitchell's designation, these individuals are a general contractor/estimator, an appraiser, and an engineer, respectively. Mitchell described Gadrow's and Foreman's testimony thus:

> The above-named witnesses may be called to testify as property experts with regard to the nature, existence of damage, loss cause (ie: hail, storm, etc), and value of Plaintiff's property and similar property. He may also offer testimony concerning the estimates and reports prepared by individuals utilized by Plaintiff in connection with their claim.
>
> Said expert will base opinions on his respective training, education, experience, and review of the reports, estimates, and data, and other documents previously produced or to be produced in this case and each respective inspection of said property. His estimates will be supplemented and are incorporated by reference.
>
> He is an estimator[/appraiser] who is expected to testify regarding his investigation and handling of Plaintiff's claim, including the cause, origin, scope of damage and costs of repair. He will testify that he properly identified and estimated the scope and amount of damage made the basis of Plaintiff's claim subject to this lawsuit.
>
> His opinions are within his claim report, deposition, estimate and claim correspondence - if any. His mental impressions and opinions are based on his training, experience, inspection and personal knowledge of his investigation and handling of the claim.
>
> He [may/]is expected to opine the following: (1) the insured location sustained covered wind and/or hail damage during the effective policy period and the proper scope of repairs to address the aforementioned damages is reflected in the estimate previously produced or to be produced[]; (2) evidence of covered damages warranting replacement of the estimated damages was obvious and reasonably clear during his site inspection and an insurance carrier adjusting this claim reasonably

12

and in good faith either knew or should have known to identify and accept coverage for the aforementioned reasonably clear damages; (3) to the extend [sic] Defendant failed to acknowledge and accept coverage for the aforementioned reasonably clear damage, Defendant adjusted this claim in bad faith; (4) Defendant did not fully indemnify the insured for his/her loss and he/she has not been paid to restore the insured's property back to pre-loss condition; and (5) the insured was underpaid for this claim and Defendant knew or should have known that its claim decision constituted an unfair denial because evidence of covered damages warranting further coverage at all times was reasonably clear during its claim investigation.

Plaintiff will supplement documents for a complete statement of this experts findings and opinions, the investigation he performed herein, and the facts and data considered by him in forming those findings and opinions

His report and resume will be supplemented if not attached.

Additional information he used in making any opinions, if any, will be supplemented if not attached.

Mitchell's designation of Perera is similar, and states that Perera would testify that "an event (ie: hail or high winds) occurred at the insured location during the policy period and said event caused damaged [sic] to the insured property."

USAA's answer contains not only a general denial, but several specific denials, policy defenses, and special exceptions. USAA expressly alleged that Mitchell "failed to demonstrate that he suffered any damages caused by a covered loss" and that Mitchell did not "provide timely notice to USAA" by not reporting the alleged loss to USAA until August 24, 2020, thereby prejudicing USAA. USAA further averred that its liability was not "reasonably clear," and that Mitchell's

13

"generic recitations" did not comply with relevant notice provisions of the DTPA and the Texas Insurance Code. USAA specially excepted on a similar basis: lack of adequate detail.

The Appraisal Process

In June 2021, Mitchell moved to compel an appraisal and to abate the case during the appraisal process. USAA responded that since the parties did not disagree on "the amount of loss," the policy did not authorize an appraisal. At the July 28, 2021 hearing, Mitchell argued that an appraisal was necessary to address the amount of the loss, and USAA argued that an appraisal would not resolve the parties' dispute because they disputed the cause of the loss and coverage for that cause rather than its repair cost. The trial court granted Mitchell's motion.

According to the January 25, 2022 Unsworn Declaration of Robert Hovanec ("Hovanec"), USAA named him as its appraiser and Mitchell named Don Foreman as his appraiser. Hovanec and Foreman then "agreed on Bryan Scanlan to serve as the umpire for this appraisal." Although they "worked to schedule an inspection of the property," they were unable to do so because, as Hovanec understood the situation, neither Mitchell nor Dick had not responded to Foreman's contact attempts.

Since the parties were unable to complete the appraisal, USAA moved to vacate the trial court's Order compelling it, arguing that "Plaintiff refused to allow

access to his property despite scheduling several attempts." USAA also contended that by "actively refus[ing] to allow the appraisal[,]" Mitchell waived any right to an appraisal and sought an offset for its costs against any future payment.

At the June 24, 2022 hearing on this motion, Plaintiff's counsel opposed USAA's request, arguing that since Mitchell had "passed away suddenly[,]" he had not committed the intentional conduct necessary to support USAA's motion. The trial court therefore reset the hearing for July 8, 2022 to enable the parties to consider their options. On July 7, 2022, Plaintiff's counsel retracted his previously filed Suggestion of Death, stating that Mitchell was "actually very much alive and has new contact information." Plaintiff also represented that Plaintiff's appraiser was then "in direct communication with Plaintiff[,]" and that the two appraisers were available to inspect the house in early August. The trial court granted USAA's motion, vacating its earlier order compelling the appraisal and assessing costs against Plaintiff. Mitchell requested the trial court to reconsider its order, representing that his computer problems prevented him from logging in to the Zoom hearing and that he was unable to timely reach court personnel by telephone.

The Discovery

On July 1, 2021, USAA served discovery requests on Mitchell, but the trial court's abatement order temporarily delayed Mitchell's response deadline. On September 12, 2022 and again on September 29, 2022, USAA reminded Dick of the

15

outstanding discovery and requested Mitchell's responses "within 7 days after the date" of the September 29, 2022 e-mail. On October 17, 2022, USAA moved to compel Mitchell's discovery responses, stating that Mitchell had "completely failed to respond to any of USAA GIC's discovery requests which [were] overdue by over three months." The trial court set the hearing on USAA's Motion to Compel for November 3, 2022. On that date, Plaintiff's counsel responded, denying that he or his client had "abused the discovery process[,]" and stating that he was "working diligently to provide Defendant Insurer with responses to Defendant Insurer's discovery requests." He indicated that he had "encountered extraordinary difficulty in communicating" with his client because Mitchell was deceased and requested the trial court to deny USAA's motion. The trial court then reset the hearing to November 17, 2022.

On November 14, 2022, USAA renewed its Motion to Compel and requested monetary sanctions against Mitchell. This motion states that Mitchell "has completely failed to provide complete and proper responses to USAA GIC's discovery requests in addition to failing to provide timely responses." USAA particularly noted that (1) Mitchell did not verify his interrogatory answers, (2) that some of Mitchell's discovery responses were contradictory, (3) and that Plaintiff's counsel again asserted that Plaintiff was deceased after retracting the prior

16

Suggestion of Death. USAA's motion makes the following specific objections, among others, to Mitchell's discovery responses:

[] Response to Interrogatory 1 [seeking witnesses' names, among other information] is incomplete as it does not list who, if anyone, witnessed the Loss at issue in this lawsuit.[]

[] Response to Interrogatory 4 [seeking the identity of each person providing responsive information] is improper as there is no verification attached to the responses.[] In fact, there is a vital question on Plaintiff's availability to give responses as noted in the Background section of this Motion [referring to Plaintiff's possible demise].[]

[] Response to Interrogatory 8 [asking what maintenance and repairs were done in the past three years] is non-responsive as Plaintiff describes efforts to mitigate without providing a description of any repairs, renovation, or improvements done to the Property.[]

[] Response to Interrogatory 10 [asking how much additional payment Plaintiff seeks under each type of policy coverage] is non-responsive as Plaintiff describes the amount of alleged damages and attorney's fees without reference to any applicable coverage under the Policy. The response is also confusing and improper as it notates a diary entry: "I did not see a Post demand letter after they sent a payment check for $3,367.11, so I just subtracted that from our Original Demand."[] Is this note part of Plaintiff's answer?

[] Responses 12 through 16 [asking how USAA violated the Texas Insurance Code, the DTPA, and breached both its contractual and common law duties] are incomplete and improper as they are just copy-and-paste allegations from Plaintiff's Original Petition and merely recite the laundry-list of alleged violations.[] These answers further call into question whether Plaintiff actually answered or participated in answering the discovery responses.

[] Response 18 [asking about recovery from TPC, the government, or any other insurer] is contradictory and improper as Plaintiff responds that he is in litigation with TPC but also responds—in Plaintiff's

17

Responses to Request for Production No. 21—that he does not have any copies of communications between him and TPC.[]

[] Plaintiff's responses to Request for Production are improper as **all** of Plaintiff's responses indicate that he "will supplement." The discovery period has ended on November 14, 2022, and Plaintiff has had nearly a year-and-a-half to investigate Plaintiff's claim and produce relevant discovery. By this time, Plaintiff should know whether he has or lacks relevant discovery requested by USAA GIC. He cannot hide from his discovery obligations by simply stating that language.[]

USAA's sanctions request observes that Dick asserted that Mitchell was dead on the same date that Dick signed unverified discovery responses "that claimed Plaintiff Michael Mitchell answered the requests or provided information to answer the requests." In USAA's words, "Mr. Dick signed these two pleadings on the very same day." Therefore, "[e]ither the response to USAA GIC's Motion was groundless when Mr. Dick affirmatively stated that Plaintiff Michael Mitchell was deceased, or the answers to interrogatories were groundless when Mr. Dick affirmatively stated that Plaintiff Michael Mitchell answered the requests."

The record contains no deposition, affidavit, or unsworn declaration of Mitchell, himself.

The Order of Dismissal

The trial court dismissed the case with prejudice on November 29, 2022. The court's order included these Findings of Fact and Conclusions of Law:

18

## FINDINGS OF FACT

1. The Court has made the following findings in support of its imposition of sanctions in this case and finds that these facts are good cause for the sanctions imposed by this Court:

2. On April 13, 2021, Plaintiff, Michael Mitchell ("Plaintiff" or "Mitchell"), filed his Original Petition as a Level 1 – Expedited Action under TEX. R. CIV. P. 190.2.

3. After filing suit, Plaintiff filed a Motion to Compel Appraisal and Abatement.

4. USAA GIC opposed that Motion, and on July 30, 2021, this Court granted Plaintiff's Motion.

5. The appraisal, however, never occurred as Plaintiff refused to allow access to his property despite several attempts by Plaintiff's chosen appraiser to schedule an inspection. Plaintiff's appointed appraiser reported that he contacted both Plaintiff and his legal counsel, but there was no response to any communications from either.

6. On May 25, 2022—nine months after this Court entered an order compelling appraisal upon Plaintiff's motion—USAA GIC moved to vacate the order compelling appraisal because Plaintiff continued to refuse access to his property.

7. In response, counsel for Plaintiff filed a response and a Suggestion of Death. Counsel for Plaintiff reported that "while investigating whether the facts stated in Defendant's Motion are true, has discovered that the reason Plaintiff is unreachable is because Plaintiff is deceased."

8. At the oral hearing on USAA GIC's motion to vacate the appraisal order, this Court re-set the hearing and gave Plaintiff's counsel the opportunity to confirm Plaintiff's passing.

9. The day before the re-set oral hearing, counsel for Plaintiff filed a retraction of Plaintiff's previous Suggestion of Death, stating that "Plaintiff's counsel was finally able to physically locate Plaintiff, who is actually very much alive and has new contact information. As such, Plaintiff's counsel respectfully retracts its previous suggestion of death."

10. When counsel for Plaintiff failed to appear at the re-set hearing, this Court granted USAA GIC's motion to vacate the appraisal order on July 28, 2022, and as a result, the abatement of discovery was lifted.

11. Prior to the abatement, on July 1, 2021, USAA GIC served Plaintiff with Interrogatories and Requests for Production.

12. As a result of the order vacating the order of abatement, on July 9, 2022, Plaintiff's objections and responses to USAA GIC's discovery requests were due.

13. It is clear Plaintiff understood that the abatement of written discovery had been lifted as he served Interrogatories, Requests for Production, and Requests for Admission on USAA GIC on July 19, 2022.

14. Plaintiff completely failed to serve his answers and responses as required by TEX. R. CIV. P. 197.2(a).

15. USAA GIC conferred with Plaintiff about his late discovery responses on numerous occasions, but Plaintiff never responded to USAA GIC or provided any responses. After these multiple attempts, USAA GIC filed its original motion to compel discovery responses on October 17, 2022, setting a hearing on the motion for November 3, 2022.

16. On the morning of the oral hearing on USAA GIC's motion to compel, counsel for Plaintiff filed a response at 10:04 a.m. stating the following:

20

Plaintiff's Counsel experienced the utmost difficulty in communicating with Plaintiff in acquiring answers, documents and other responsive material. Specifically, Plaintiff has not responded to Plaintiff's Counsel's diligent and persistent attempts to reach Plaintiff and confer over discovery. Plaintiff's Counsel has been unsuccessful in this endeavor because Plaintiff has been unreachable. Plaintiff's Counsel informs while attempting to facilitate Plaintiff's compliance with discovery requirements the reason Plaintiff is unreachable is because Plaintiff is deceased. Plaintiff's Counsel is actively trying to locate heirs of Plaintiff's estate who may have an interest in the suit.

17. In support of this response, counsel for Plaintiff cited the previously retracted Suggestion of Plaintiff's Death.

18. Within hours of Plaintiff's counsel re-asserting Plaintiff's Suggestion of Death, Plaintiff's counsel served discovery responses, including answers to Interrogatories, purportedly answered by Plaintiff.

19. These responses were served on USAA GIC fifteen (15) minutes prior to the oral hearing on USAA GIC's motion to compel.

20. In light of the responses being provided to USAA GIC, albeit belated, the Court gave Plaintiff an opportunity to comply with his discovery obligations by resetting the hearing by one week, giving USAA GIC time to review the responses and raise any remaining concerns.

21. Prior to the re-set hearing on USAA GIC's motion to compel, USAA GIC filed a renewed Motion to Compel, outlining inadequacies throughout Plaintiff's purported discovery responses.

22. Specifically, Plaintiff's responses were deficient, incomplete, and effectively provided no answers to the requests. In addition, the Interrogatory answers were not verified by Plaintiff.

21

# CONCLUSIONS OF LAW

23. After multiple opportunities and hearings to comply with the Texas Rules of Civil Procedure, Plaintiff has completely failed to fulfill discovery obligations and has abused the discovery process.

24. Under TEX. R. CIV. P. 215.1(c), Plaintiff has abused the discovery process by serving or incomplete answers to discovery requests and has effectively failed to answer discovery requests.

25. Under TEX. R. CIV. P. 215.1(b)(3), Plaintiff has abused the discovery process by failing to participate in the discovery process at all in this case.

26. In addition, counsel for Plaintiff violated TEX. R. CIV. P. 13 by signing and filing pleadings that were groundless, brought in bad faith, or brought for the purpose of harassment. *See* TEX. R. CIV. P. 13. Specifically, counsel for Plaintiff incorrectly filed a Suggestion of Plaintiff's Death, then retracted it, then re-asserted it.

27. Under these circumstances, this Court has discretion to strike the Plaintiff's pleadings and dismiss the case under TEX. R. CIV. P. 215.2(b)(5).

28. Under these circumstances, this Court has the inherent authority to dismiss the case in its entirety which it finds to be just under the facts and circumstances. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).

29. This Court has determined that based on multiple violations of the Texas Rules of Civil Procedure and violations of this Court's orders, there are no lesser sanctions that would fully promote compliance. This Court considered the availability of lesser sanctions, but given Plaintiff's repeated failure to comply with this Court's orders and his discovery obligations, lesser sanctions would be ineffective to promote full compliance.

The court then struck Mitchell's pleadings and dismissed his case with prejudice.

Mitchell timely moved for a new trial and reconsideration of the trial court's dismissal order. In his motion, Mitchell repeated many of his previous allegations against USAA, specifically, that the TPC explosion damaged his house within the policy period, that he satisfied all conditions precedent, and that USAA breached its contract, the DTPA, and the Texas Insurance Code, as well as committing fraud and conspiracy. Mitchell also represented that the discovery issues were due to communication difficulties and that he and USAA participated in the appraisal, but USAA "rejected the appraisal award claiming Plaintiff had no pecuniary interest in the insured property nor suffered a pecuniary loss[.]" USAA avers that the information about a rejected appraisal is incorrect, and no such appraisal or rejection appears in the appellate record.

When Mitchell filed his First Amended Motion for New Trial and Motion to Reconsider, he removed his previous contention about an appraisal and USAA's rejection of it, but otherwise repeated the content of his prior motion. Neither Mitchell's original nor his amended motion argues that the trial court erroneously failed to consider or impose less-severe sanctions before striking his pleadings and dismissing the case. Mitchell's response to USAA's January 19, 2023 Motion for Sanctions, however, does bring these arguments to the trial court's attention, but this

23

response was not filed within thirty days after the trial court signed the dismissal on November 29, 2022.

At the February 2, 2023 hearing on Mitchell's Motion for New Trial and Motion to Reconsider, Mitchell stated, through counsel, that the basis of his motion was that "no other sanctions had been tried[,]" and that "death penalty sanctions . . . were [not] appropriate here." Mitchell made no other specific arguments explaining why he believed death penalty sanctions were inappropriate. The trial court denied Mitchell's Motion for New Trial and Motion to Reconsider.

## ANALYSIS

On appeal, Mitchell argues that the trial court erred by imposing "death penalty sanctions" and advances six individual arguments to support his position. In response, USAA contends that Mitchell failed to preserve error, since he did not present his complaints on appeal to the trial court until he filed his Response to Defendant's Motion for Sanctions sixty-four days after the trial court signed the Order of Dismissal with Prejudice.[1]

To preserve error for appellate review, a party must timely complain to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" Tex. R. App. P.

---

[1] The trial court signed the Order of Dismissal on November 29, 2022, and Mitchell filed his Response to Defendant's Motion for Sanctions on February 1, 2023.

33.1(a)(1)(A). The Rules of Civil Procedure also apply here, dictating that "[g]rounds of objections couched in general terms . . . shall not be considered by the court[]" and "[e]ach point relied upon in a motion for new trial . . . shall briefly refer to that part of the ruling of the court . . . in such a way that the objection can be clearly identified and understood by the court." Tex. R. Civ. P. 321, 322; *see Redmond v. Kovar*, No. 09-17-00099-CV, 2018 Tex. App. LEXIS 925, at **5–6 (Tex. App.—Beaumont Feb. 1, 2018, no pet.) (mem. op.) (discussing error preservation requirements).

Although Mitchell timely filed his Motion for New Trial and Motion to Reconsider on December 29, 2022, the thirtieth day after the trial court signed its dismissal, this motion does not meet the specificity requirement of Rule 33.1, in that it states only that "the Court should not have granted judgment and death penalty sanctions here because material fact issues clearly remain for which such judgment is inappropriate." *See* Tex. R. App. P. 33.1(a)(1)(A). Mitchell's motion not only phrases his complaint in general terms, it fails to present his specific complaints about the dismissal "in such a way that the objection can be clearly identified and understood by the court." Tex. R. Civ. P. 321, 322.

Nowhere in his motion does Mitchell mention the individual arguments he makes on appeal, namely, (1) a distinction between his and Dick's misconduct, (2) the presumption that his case lacks merit, based on the misconduct, (3) the use of

25

lesser sanctions, (4) the applicability of the Texas Civil Practice and Remedies Code, (5) the trial court's inherent authority, or (6) the trial court's consideration of his appraisal misconduct. Mitchell's motion does not even state that the trial court abused its discretion in dismissing his case. It was not until February 1, 2023, in his response to USAA's sanctions request, that Mitchell broached these arguments. *Moritz v. Preiss* therefore controls our disposition of this issue. 121 S.W.3d 715, 720 (Tex. 2003).

The *Moritz* court considered a procedurally similar case. In describing the effect of the appellant's amended motion for new trial, which raised a new argument more than thirty days after the judgment was signed, the *Moritz* court stated:

> If the trial court ignores the tardy motion, it is ineffectual for any purpose. The court, however, may look to the motion for guidance in the exercise of its inherent power and acting before its plenary power has expired, may grant a new trial; but if the court denies a new trial, the belated motion is a nullity and supplies no basis for consideration upon appeal of grounds which were required to be set forth in a timely motion.

*Id*. (quoting *Kalteyer v. Sneed*, 837 S.W.2d 848, 851 (Tex. App.—Austin 1992, no writ) (other citation omitted).

Under the rationale of *Moritz*, the trial court could have disregarded Mitchell's untimely arguments raised in his response to USAA's sanctions motion or granted Mitchell a new trial. *See id*. at 720. Regardless of the trial court's choice to grant or deny a new trial, any argument first raised more than thirty days after the judgment

was signed is not preserved for appellate review. *See id.*; *see also Lake Livingston Props., Inc. v. Stephens Hills Prop. Owner's Ass'n*, No. 09-15-00304-CV, 2016 Tex. App. LEXIS 13000, at \*7 (Tex. App.—Beaumont Dec. 8, 2016, no pet.) (mem. op.) ("'[A]n untimely amended motion for new trial does not preserve issues for appellate review, even if the trial court considers and denies the untimely motion within its plenary power period.'") (quoting *Moritz*, 121 S.W.3d at 721).

Since Mitchell's complaints in his Motion for New Trial and Motion to Reconsider were not "apparent from the context," and since his complaints on appeal were first raised in his untimely response to USAA's sanctions motion, we hold that he failed to preserve his complaints for our review. *See* Tex. R. App. P. 33.1(a)(1)(A); Tex. R. Civ. P. 321, 322; *Moritz*, 121 S.W.3d at 719–21. Accordingly, we need not address the merits of his complaints. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having determined that Mitchell failed to preserve any error for our review, we conclude Mitchell has failed to show the trial court erred in striking his pleadings and dismissing his case against USAA with prejudice. We affirm the trial court's Order of Dismissal with Prejudice.

27

AFFIRMED.

JAY WRIGHT
Justice

Submitted on September 26, 2024
Opinion Delivered February 27, 2025

Before Golemon, C.J., Wright and Chambers, JJ.